MARC E. ELIAS, ESQ. (D.C. Bar No. 442007) (*pro hac vice forthcoming*)
COURTNEY A. ELGART, ESQ. (D.C. Bar No. 1645065) (*pro hac vice forthcoming*)
HENRY J. BREWSTER, ESQ. (D.C. Bar No. 1033410) (*pro hac vice forthcoming*)
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960
Tel: (202) 654-6200
melias@perkinscoie.com
celgart@perkinscoie.com
hbrewster@perkinscoie.com

ABHA KHANNA, ESQ. (Wash. Bar No. 42612) (*pro hac vice forthcoming*)
REINA A. ALMON-GRIFFIN, ESQ. (Wash. Bar No. 54651) (*pro hac vice forthcoming*)
JONATHAN P. HAWLEY, ESQ. (Wash. Bar No. 56297) (*pro hac vice forthcoming*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
akhanna@perkinscoie.com
ralmon-griffin@perkinscoie.com
jhawley@perkinscoie.com

BRADLEY SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120
Tel: (702) 341-5200
bschrager@wrslawyers.com
dbravo@wrslawyers.com

*Attorneys for Proposed Intervenor-Defendants
DNC Services Corporation/Democratic National
Committee, DCCC, and Nevada State
Democratic Party*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., REPUBLICAN NATIONAL COMMITTEE, and NEVADA REPUBLICAN PARTY,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State, | Case No.: 2:20-cv-01445-JCM-VCF<br><br>**MOTION TO INTERVENE AS DEFENDANTS**<br><br>EXPEDITED BRIEFING SCHEDULE REQUESTED |

|  |  |
|---|---|
|  | Defendant, |
| and |  |
| DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, and NEVADA STATE DEMOCRATIC PARTY, |  |
|  | Proposed Intervenor-Defendants. |

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee ("DNC"), DCCC, and the Nevada State Democratic Party ("NSDP," and collectively, "Proposed Intervenors") move to intervene as defendants in the above-titled action. Defendant consents to this motion and Plaintiffs reserve taking a position.

The United States is in the midst of an unprecedented public health crisis; Nevada is no exception. The highly contagious coronavirus has fundamentally altered Nevadans' daily lives—including how they vote. Recognizing that the novel coronavirus will impact the November 3, 2020 general election (the "November Election"), the Nevada Legislature enacted Assembly Bill 4. It has two parts. The first—at issue in this lawsuit—articulates an infrastructure for elections held during states of emergency. These changes largely incorporate and supplement Nevada's existing election laws and provide greater certainty to election officials regarding how the November Election (and any future elections held during emergencies) should be conducted. The second part of Assembly Bill 4—not challenged by Plaintiffs—makes general, permanent changes to Nevada's election laws. As a result, the Legislature has taken the necessary and appropriate steps to ensure that all Nevadans have safe and meaningful opportunities to vote, both during the pandemic and after.

Plaintiffs Donald J. Trump for President, Inc., Republican National Committee, and Nevada Republican Party now seek to undo several of Assembly Bill 4's important provisions.

Plaintiffs allege a hodgepodge of claims, none of them viable, in an attempt to undermine the State's efforts to provide certainty to election officials and protect Nevada voters during a public health crisis. Their claims thus pose a clear and direct threat to Proposed Intervenors' rights and legal interests.

For the reasons set forth below, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Such intervention is needed to protect the substantial and distinct legal interests of Proposed Intervenors, which will otherwise be inadequately represented in this litigation. In the alternative, Proposed Intervenors should be granted permissive intervention pursuant to Rule 24(b). In accordance with Rule 24(c), a proposed Answer is attached as Exhibit 1.

Proposed Intervenors also respectfully request that this Court enter an expedited briefing schedule on this Motion.

## BACKGROUND

On March 24, 2020, in response to the coronavirus pandemic, Defendant Barbara Cegavske (the "Secretary") announced plans to "conduct an all-mail election" for the June 9, 2020 Primary (the "June Primary Plan"). Press Release, Nev. Sec'y of State, *Secretary Cegavske Announces Plan to Conduct the June 9, 2020 Primary Election by All Mail* (Mar. 24, 2010), https://www.nvsos.gov/sos/Home/Components/News/News/2823/23. While the June Primary Plan required county election officials to mail ballots to all active registered voters, it significantly reduced in-person voting opportunities, allocating only one polling location for each county regardless of population. *Id*. Moreover, the June Primary Plan did *not* address the impacts of Nevada election laws that burdened the right to vote for Nevadans attempting to vote by mail.

### A. The State Court Action

On April 10, NSDP sent a letter to the Secretary expressing concern about the lack of in-person polling locations in Nevada's more populous counties and the likely disenfranchising impact of Nevada's voter assistance ban. *See* Letter to Hon. Barbara Cegavske, NSDP (Apr. 10, 2020), https://nvdems.com/wp-content/uploads/2020/04/200410-Letter-to-Hon.-Barbara-

Cegavske.pdf. On April 16, after the Secretary refused to address NSDP's concerns, *see* April Corbin Girnus & Arianna Skibell, *Nevada Dems Push for Changes to Upcoming All-Mail Primary*, Nev. Current (Apr. 15, 2020), https://www.nevadacurrent.com/2020/04/15/nevada-dems-push-for-changes-to-upcoming-all-mail-primary, Proposed Intervenors—joined by Priorities USA and a group of concerned Nevada voters (collectively, the "State Court Plaintiffs")—filed a lawsuit in Nevada state court seeking declaratory and injunctive relief (the "State Court Action"). *See* Compl. for Declaratory and Injunctive Relief, *Corona v. Cegavske*, No. 20 OC 00064 1B (Nev. Dist. Ct. Apr. 16, 2020).[1] The State Court Plaintiffs' complaint and subsequently filed motion for preliminary injunction argued, among other things, that the Nevada and U.S. Constitutions require Nevada election officials to provide additional voting locations in more populous counties and allow third parties to assist voters in returning their mail ballots. The Republican National Committee and Nevada Republican Party, both Plaintiffs here, moved for and were granted intervention as defendants in the State Court Action. The State Court Plaintiffs withdrew their request for an injunction as to the June 2020 primary election (the "June Primary") when Clark County agreed to open additional polling locations and provide other remedial measures that would help people vote.[2]

Following the June Primary, on June 19, the State Court Plaintiffs filed an amended

---

[1] The *Corona* complaint can also be found attached to Proposed Intervenors' motion to intervene in a separate federal court action. *See* Mot. to Intervene as Defendants, Ex. 3, *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC (D. Nev. Apr. 27, 2020), ECF No. 27-3.

[2] Around the same time, a different set of voters filed suit in this Court, challenging the June Primary Plan's requirement that election officials mail ballots to active, registered voters. *See* Verified Compl. for Declaratory and Injunctive Relief, *Paher v. Cegavkse*, No. 3:20-cv-00243-MMD-WGC (D. Nev. Apr. 21, 2020), ECF No. 1. Among other things, the *Paher* plaintiffs argued that vote by mail would result in an increased risk of voter fraud that threatened to dilute their votes. Proposed Intervenors sought and were granted intervention as of right in that case. *See Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *1 (D. Nev. Apr. 28, 2020). This Court ultimately rejected the *Paher* plaintiffs' claims—including their "speculative claim of voter fraud"—and dismissed the case. *Paher v. Cegavkse*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813, at *1, *5 (D. Nev. Apr. 30, 2020); *see also Paher v. Cegavkse*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 4431567, at *7 (D. Nev. July 31, 2020).

complaint narrowing their claims to the State's ban on voter assistance in returning mail ballots and its signature match laws for mailing and absentee ballots. *See* Am. Compl. for Declaratory and Injunctive Relief, *Corona v. Cegavske*, No. 20 OC 00064 1B (Nev. Dist. Ct. June 19, 2020). Trial was set for August 17, 2020, and discovery commenced.

In the meantime, the coronavirus pandemic worsened. Shortly before Nevada's election officials decided to convert the June Primary to a mail-based election, on March 12, 2020, Nevada reported 11 total cases of COVID-19. *See Nevada Coronavirus Map and Case Count*, N.Y. Times https://www.nytimes.com/interactive/2020/us/nevada-coronavirus-cases.html (last visited Aug. 7, 2020). By July, Nevada was reporting between 412 and 1,437 new cases of COVID-19 *each day*. *See id*. In total, Nevada has experienced more than 53,000 confirmed case of COVID-19 to date. *See id*.[3]

**B.     Assembly Bill 4**

On August 3, the Nevada Legislature enacted Assembly Bill 4 ("A.B. 4"). *See* AB4, Nev. Elec. Legis. Info. Sys., https://www.leg.state.nv.us/App/NELIS/REL/32nd2020Special/Bill/7150/Text (last visited Aug. 7, 2020). Assembly Bill 4 makes several updates to the Nevada election code, only some of which are at issue in this case. Sections 2 to 27 codify procedures for conducting elections during declared states of emergency, including the November Election, with the stated purpose of ensuring that "[e]lection officials have certainty concerning the procedures to prepare for and conduct an" affected election and that "voters have faith and confidence that they can participate in [an] affected election and exercise their right to vote without fear for their health, safety and welfare under such circumstances." A.B. 4, § 2.

Relevant here, Sections 2 to 10 set forth the general principles governing interpretation of

---

[3] The number of confirmed deaths from COVID-19 has also greatly increased since Governor Sisolak first declared a state of emergency. On March 16, 2020, Nevada reported its first confirmed death from COVID-19. *See Nevada Coronavirus Map*, *supra*. Since then, at least 900 Nevadans have died from the disease. *See id*.

the law, and when the law applies. For example, Sections 5 and 8 define an "affected election" subject to Sections 2 to 27 as one occurring when either the Governor or the Legislature has proclaimed a state of emergency or declaration of disaster by a certain time. And Section 9 clarifies that the other, non-conflicting provisions of Chapter 293 of the Nevada Revised Statutes ("N.R.S.")—the election code—continue to apply to mail-based elections. Next, Sections 11 to 13 address the long lines experienced in the states' most populous counties during the June Primary by requiring Nevada counties to offer a minimum number of vote center polling locations based on population. Then, Sections 15 and 16 modify Nevada's current election laws—which previously *allowed* counties to mail ballots to voters, *see* N.R.S. 293.213(4)—to *require* counties to do so if an election is affected by a state of emergency. Finally, Sections 17 to 27 provide an infrastructure for mail-based elections, incorporating and on building upon preexisting election laws to ensure that mail-based elections under Assembly Bill 4 are administered consistently with other Nevada elections. For example, Section 20 applies the postmark law that already exists for absentee ballots to mail ballots. *Compare* A.B. 4, § 20 *with* N.R.S. 293.317. And Section 22 codifies the authority county election officials already possess and exercise to create procedures for processing ballots. Assembly Bill 4 also addresses the concerns raised in the State Court Action by allowing third parties to assist voters in returning mail ballots both in a state of emergency, *see* A.B. 4, § 21, and otherwise, *see id.*, §§ 44, 70.

Following the passage of Assembly Bill 4, but before it was even signed by the Governor, counsel for Plaintiffs Republican National Committee and Nevada Republican Party—intervenor-defendants in the State Court Action—demanded immediate dismissal of the State Court Plaintiffs' amended complaint in light of Assembly Bill 4, threatening to move for sanctions if they did not oblige. The State Court Plaintiffs, acknowledging that Assembly Bill 4 fully addressed their claims, voluntarily dismissed the case on August 4.

### C. The Present Litigation

Later that day, Plaintiffs initiated this suit. Their complaint lodges five challenges to Assembly Bill 4, all confined to Sections 2 to 27. Count I challenges its postmark law in the

context of mail-based elections. Count II challenges its guidelines for allocating vote center polling locations. Count III challenges Section 22, which allows county election officials to establish the procedures for processing and counting mail ballots. Count IV challenges Section 25, which provides guidance on the processing of ballots that are folded together in the same return envelope. And Count V challenges Assembly Bill 4's entire mail-based election infrastructure set forth in Sections 2 to 27 as a violation of the right to vote, based on the purported threat of voter fraud.

Plaintiffs' success in this litigation would make it more difficult for Proposed Intervenors' supporters and members to vote and threaten to undo the basis on which Proposed Intervenors dismissed the State Court Action—both of which are interests not shared by the present parties in this litigation. For these and other reasons, Proposed Intervenors now move to intervene.

## STANDARD OF LAW

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *accord Venetian Casino Resort, LLC v. Enwave Las Vegas, LLC*, No. 2:19-CV-1197 JCM (DJA), 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (noting intervention requirements "are broadly interpreted in favor of intervention" (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006))); *see also W. Expl. LLC v. U.S. Dep't of Interior*, No. 3:15-cv-00491-MMD-VPC, 2016 WL 355122, at *2 (D. Nev. Jan. 28, 2016) (noting Rule 24's liberal construction and "focus[] on practical considerations rather than technical distinctions").

The Ninth Circuit "require[s] applicants for intervention as of right pursuant to Rule 24(a)(2) to meet a four-part test":

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

7

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

"Rule 24(b) permits the Court to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 718825, at *2 (D. Nev. Jan. 14, 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)).

## ARGUMENT

**I.     Proposed Intervenors satisfy Rule 24(a)'s requirements for intervention as a matter of right.**

Proposed Intervenors satisfy each of the four requirements of Rule 24(a).

***First***, the motion is timely. Plaintiffs filed their complaint on August 4, 2020; this motion follows three days later, and before any substantive activity in the case. There has therefore been no delay, and no possible risk of prejudice to the other parties. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *see also Nevada*, 2019 WL 718825, at *2 (granting motion to intervene filed several weeks after action commenced); *W. Expl.*, 2016 WL 355122, at *2 (granting motion to intervene filed nearly two months after action commenced).

***Second*** and ***third***, Proposed Intervenors have significant protectable interests in this lawsuit that might be impaired by Plaintiffs' causes of action. "An applicant [for intervention] has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *W. Expl.*, 2016 WL 355122, at *2 (quoting *Lockyer*, 450 F.3d at 441). In assessing whether such an interest is sufficiently "impair[ed] or impede[d]," Fed. R. Civ. P. 24(a)(2), courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)). "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an

applicant's ability to protect that interest." *Venetian Casino Resort*, 2020 WL 1539691, at *3 (citing *Lockyer*, 450 F.3d at 442).

Plaintiffs' challenge to Assembly Bill 4 would impair Proposed Intervenors' legally protected interests. In addition to representing the interests of its members who risk disenfranchisement, Proposed Intervenors also possess organizational interests that are threatened by Plaintiffs' lawsuit. If Plaintiffs succeed and the challenged portions of Assembly Bill 4 are enjoined, then Proposed Intervenors—each of which is an organization dedicated to promoting the franchise and supporting the election of Democratic Party candidates—will suffer direct injury because fewer Democratic voters will have an opportunity to vote and have their votes counted in the November Election and future contests. Without expansive opportunities to vote by mail coupled with meaningful opportunities to vote in person, many Nevadans will be forced to choose between risking their health to vote and participating in the November Election. The result will be far less robust turnout among Democratic supporters. Courts have routinely concluded that interference with a political party's electoral prospects constitutes a direct injury that satisfies Article III standing, which goes beyond the requirement needed for intervention under Rule 24(a)(2) in this case. *See, e.g.*, *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the potential loss of an election" is sufficient injury to confer Article III standing); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and particularized injury"); *cf. Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (noting that an intervenor by right only needs "Article III standing in order to pursue relief that is different from that which is sought by a party with standing"). Indeed, Proposed Intervenors have intervened in several voting cases this cycle on this very theory. *See Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention of right to DCCC); *Republican Nat'l Comm. v. Newsom*, No. 2:20-cv-01055-MCE-CKD, slip op. at 5 (E.D. Cal. June 10, 2020), ECF No. 38 (same); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention as of right to DNC,

DCCC, and NSDP where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates").

Moreover, the disruptive and disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to address restricted voting opportunities—another legally protected interest that is implicated by Plaintiffs' claims. *See, e.g., Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc). Accordingly, Proposed Intervenors satisfy the second and third requirements of Rule 24(a)(2).

***Fourth***, Proposed Intervenors cannot rely on the parties in this case to adequately represent their interests. "Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention":

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086). "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate," and therefore "the burden of making this showing is minimal." *Id.* (quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)).

While the Secretary has an undeniable interest in defending the actions of state government, Proposed Intervenors have a different focus: ensuring that every Democratic voter in Nevada has a meaningful opportunity to cast a ballot and have that ballot counted, both in the

November Election and in future elections. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here, where Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources to promote get-out-the-vote-efforts—that neither the Secretary nor any other party in this lawsuit shares. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard Nevada[ns'] right to vote that are distinct from [state defendants'] arguments"); *Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, No. 09-01622, 2009 WL 5206722, at *2–3 (E.D. Cal. Dec. 23, 2009) (granting intervention where defendant state agency's "main interest is ensuring safe public roads and highways" and agency "is not charged by law with advocating on behalf of minority business owners" as intervenors would). Indeed, the Secretary's inability to adequately safeguard Proposed Intervenors' interests is evidenced by the course of the State Court Action, in which Proposed Intervenors and the Secretary were opposing parties. Proposed Intervenors cannot rely on the Secretary―their adversary in the State Court Action―to adequately safeguard their legally protected interests in this case.

Phrased in the parlance of Rule 24, neither Plaintiffs nor the Secretary have interests "such that [they] will undoubtedly make all of" Proposed Intervenors' arguments. *W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086). While the Secretary might defend Assembly Bill 4 as a law properly passed by the Nevada Legislature, she is less likely to join Proposed Intervenors in advocating that certain of Assembly Bill 4's policies challenged in this suit are *required* to safeguard Nevadans' right to vote. By actively arguing against Proposed Intervenors' positions in the State Court Action, the Secretary has clearly demonstrated that she

11

is neither "capable [nor] willing to make such" critical arguments. *W. Expl.*, 2016 WL 355122, at *3 (quoting *Arakaki*, 324 F.3d at 1086); *see also, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (granting motion to intervene as of right where private parties' interests diverged from the government's interest in representation, and where "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement"); *Venetian Casino Resort*, 2020 WL 1539691, at *4 (granting intervention where intervenor and defendant "ha[d] a similar interest" but it was "conceivable that [defendant's] interest . . . could conflict with [intervenor's] interest"); *Ohio River Valley Envtl. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (granting motion to intervene as of right where defendant and proposed intervenor had identical goals but the "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense" and "[t]he possibility that this difference in vigor could unearth a meritorious argument overlooked by the current Defendant justifies the potential burden on having an additional party in litigation").

Proposed Intervenors intend to forcefully promote the ability of *all* eligible Nevadans to cast ballots in the November Election and have those ballots counted. Because these arguments will not be made by the current parties to the litigation, Proposed Intervenors cannot rely on the Secretary to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See Paher*, 2020 WL 2042365, at *3 (granting DNC, DCCC, and NSDP intervention as of right in challenge to the June Primary Plan).

**II. Alternatively, Proposed Intervenors satisfy Rule 24(b)'s requirements for permissive intervention.**

Even if this Court were to find Proposed Intervenors ineligible for intervention as of right, they easily satisfy the requirements for permissive intervention under Rule 24(b), which provides the Court with broad discretion "to allow anyone to intervene who submits a timely

1  motion and 'has a claim or defense that shares with the main action a common question of law or
2  fact.'" *Nevada*, 2019 WL 718825, at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)).[4] "Because a court
3  has discretion in deciding whether to permit intervention, it should consider whether intervention
4  will cause undue delay or prejudice to the original parties, whether the applicant's interests are
5  adequately represented by the existing parties, and whether judicial economy favors
6  intervention." *Id.* (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

7  For the reasons discussed in Part I *supra*, Proposed Intervenors' motion is timely, and
8  they cannot rely on the Secretary to adequately protect their interests. Proposed Intervenors also
9  have defenses to Plaintiffs' claims that share common questions of law and fact—for example,
10 whether Plaintiffs have stated a claim under the Equal Protection Clause.

11 And significantly, intervention will result in neither prejudice nor undue delay. Proposed
12 Intervenors have an undeniable interest in a swift resolution of this action to ensure that
13 Assembly Bill 4 is timely implemented to allow every eligible Nevadan to cast a ballot—and
14 have that ballot counted—in the November Election. Indeed, Proposed Intervenors contend that
15 *this action itself* threatens to cause harmful delays that could stymie the State's efforts to
16 circulate mail ballots. Proposed Intervenors therefore have a strong interest in defending
17 Assembly Bill 4 and opposing Plaintiffs' lawsuit. Given the legal and factual shortcomings of
18 Plaintiffs' claims, Proposed Intervenors are confident that their intervention in this case, and the
19 filings that will follow, will result in expeditious resolution of this litigation.

## REQUEST TO EXPEDITE BRIEFING SCHEDULE

21 Proposed Intervenors believe that expeditious resolution of the Motion would serve the
22 interests of judicial efficiency and ensure that Proposed Intervenors are able to protect their
23 rights and interests. Proposed Intervenors respectfully request the following briefing schedule:

---

[4] Although permissive intervention also generally requires that "the court has an independent basis for jurisdiction," that finding "is unnecessary where, as here, in a federal question case the proposed intervener raises no new claims." *Nevada*, 2019 WL 718825, at *2 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)).

13

• Responses to Proposed Intervenors' Motion to Intervene as Defendants shall be filed on or before Wednesday, August 12, 2020; and

• Proposed Intervenors' reply briefs, if any, shall be filed on or before Thursday, August 13, 2020.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

DATED this 7th day of August, 2020

**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN. LLP**

By: _____/s/ Bradley Schrager_____
Bradley S. Schrager, Esq., SBN 10217
Daniel Bravo, Esq., SBN 13078
3556 E. Russell Road, Second Floor
Las Vegas, Nevada 89120

Marc E. Elias, Esq.*
Courtney A. Elgart, Esq.*
Henry J. Brewster, Esq.*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960

Abha Khanna, Esq.*
Reina A. Almon-Griffin, Esq.*
Jonathan P. Hawley, Esq.*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099

*Attorneys for Proposed Intervenor-Defendants DNC Services Corporation/Democratic National Committee, DCCC, and Nevada State Democratic Party*

*\*Pro hac vice applications forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th of August, 2020 a true and correct copy of **MOTION TO INTERVENE AS DEFENDANTS** was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
WOLF, RIFKIN, SHAPIRO, SCHULMAN &
RABKIN, LLP