Wes Williams Jr.
Nevada Bar No. 6864
Law Offices of Wes Williams Jr., P.C.
P.O. Box 100
Schurz, NV  89427
(775) 530-9789
wwilliamslaw@gmail.com

Jacqueline De León, Esq. (*pro hac vice* forthcoming)
California Bar No. 288192
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302-6296
(303) 447-8760
jdeleon@narf.org

Samantha B. Kelty, Esq. (*pro hac vice* forthcoming)
Arizona Bar No. 024110, Texas Bar No. 24085074
NATIVE AMERICAN RIGHTS FUND
1514 P St NW Ste. D
Washington, DC 20005
(928) 814-8922
kelty@narf.org

*Attorneys for Proposed Intervenor-Defendants, Pyramid Lake Paiute and Walker River Paiute Tribes*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., REPUBLICAN NATIONAL COMMITTEE, AND NEVADA REPUBLICAN PARTY,<br><br>          Plaintiffs,<br><br>vs.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of state, | Case No.: 2:20-cv-01445-JCM-VCF<br><br>**MOTION TO INTERVENE**<br><br>EXPEDITED BRIEFING SCHEDULE REQUESTED |

|   |   |
|---|---|
|   | Defendants |
|   | and |
|   | DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, and NEVADA STATE DEMOCRATIC PARTY, |
|   | Intervenor-Defendants |
|   | and |
|   | PYRAMID LAKE PAIUTE TRIBE AND WALKER RIVER PAIUTE TRIBE, |
|   | Proposed Intervenor-Defendants. |

Pursuant to Federal Rule of Civil Procedure 24, proposed intervenor-defendants Pyramid Lake Paiute Tribe ("Pyramid Lake") and Walker River Paiute Tribe ("Walker River") (jointly "proposed tribal intervenors"), sovereign, federally recognized tribes located in Nevada, move to intervene as defendants in the above-titled action. This motion is consented to by Defendant Cegavske and DNC Intervenor-Defendants. Plaintiffs oppose. Because this case is time sensitive, proposed tribal intervenors request expedited review.

## OVERVIEW

Since Nevada's founding, Native American voters have fought for an equal opportunity to vote. As recently as 2016, Pyramid Lake and Walker River brought a Section 2 Voting Rights Act claim and successfully secured more equitable on reservation polling places and early voting sites. *Sanchez v.*

*Cegavske*, 214 F. Supp. 3d 961 (D. Nev. 2016). This year, in response to the global COVID-19 pandemic Nevada, understandably, conducted its primary election entirely by mail in ballot. Despite being a well-intentioned means to combat the deadly COVID-19 outbreak, the move to vote by mail uniquely and severly burdened the ability of Native Americans in Nevada to vote and undermined the recent gains the tribes won in their Section 2 litigation. Geographic isolation, significant distance from post offices, limited rural post office hours, lack of transportation options, lack of Internet access, and other socio-economic factors, compounded by the COVID-19 pandemic, make it very difficult for Walker River Paiute and Pyramid Lake members to cast their ballots by mail.

Unlike most of the rest of the Nevadan electorate, of the over 32,000 Native Americans living in Nevada, many tribal members living on reservations in Nevada do not receive residential mail delivery and therefore cannot safely vote by mail from home. Only 35% of all reservations and colonies have home mail service.  For the 2020 primary election there were no ballot drop boxes located on either of proposed tribal intervenors' reservations.  The approximate 2,500 tribal members who live on the Walker River Paiute and Pyramid Lake Paiute reservations have no residential mail service and receive mail, including election mail, through P.O. Boxes. More often than not, they drop off mail at the nearest open post office.

However, accessing the post office is difficult for many Native Americans living on rural reservations. In Nevada, nine out of the fourteen reservations and colonies lack a post office within jurisdictional boundaries. These post offices are open and staffed for limited hours. If a Native voter wishes to guarantee that their ballot is post-marked, they have to go into a post office to mail their ballot during operating hours and request a postmark. In Nevada, no post office located on a reservation or colony is open for more than 6 hours. The average distance from a

reservation or colony to a post office location open 7.5 hours or more is 53.88 miles – 107.76 miles round trip. For example, Native Americans from Owhyee (where the Duck Valley reservation is located) must travel 97.2 miles, 194.4 miles round trip – to Elko in Elko County if they wish to utilize a post office open 7.5 hours or more.

Transportation is also a barrier for Native Americans attempting to pick up or drop off mail. Due to disproportionately high rates of poverty, many Native Americans lack regular access to a working vehicle, money for gasoline, or car insurance. And 12.8% of Native Americans in Nevada have no access to a vehicle at all. In proposed tribal intervenors' communities, many tribal members share one vehicle among a large household. Due to housing shortages, it is common to have 7-10 people sharing a small home. Often, the single working car is used to commute to off-reservation employment and is not available for use during the workday to the rest of the household. This lack of transportation means it is especially difficult to pick up and drop off mail from the post office.

Not only are post offices more difficult for Native Americans to access, delivery of the mail coming to and from post offices serving Native Americans is often slow. For example, if a resident mails a letter from Schurz, Nevada (the only town on the Walker River reservation) to the nearest city of Hawthorne (roughly 34 miles away), the mail will first travel to Reno, Nevada – 90 miles away – to be sorted before it is sent back to Hawthorne. These circuitous routes add delivery time to mail sent to and from reservation communities.

Ballots sent by Native Americans must also travel much further than the ballots sent by non-Natives. The county seats responsible for counting returned ballots are unreasonably far from Native American reservations. On average, the distance from the fourteen reservations and colonies to their county seat is 66.75 miles. The Goshute Reservation is 135 miles away from Ely in White Pine County, their county seat.

Given these obstacles, the move to all vote by mail resulted in depressed Native American turnout for the 2020 primary election conducted entirely by mail. For example, despite being the largest precinct in Mineral County, the precinct where the Walker River Paiute reservation votes – tribal precinct 11 – had the lowest voter turnout at just 21.93%. Get out the vote activists on both the Walker River and Pyramid Lake reservations report the move to vote by mail hindered Native American turnout.

Nevertheless, voting by mail – in conjunction with on-reservation voting sites – remains an important option to combat the ongoing COVID-19 outbreak. Native communities are especially vulnerable to COVID-19. Despite significant data limitations facing researchers interested in tracking COVID-19 rates among Native Americans,[1] it is clear that Native Americans are being impacted by COVID-19 to a greater extent than non-Hispanic whites. Recent analysis of 23 states with adequate racial/ethnic data, including Nevada, conducted by the Center for Disease Control finds that Native Americans are 3.5 times more likely to test positive for COVID-19 than non-Hispanic whites.[2] The CDC report also reveals that infection rates among Native Americans in these states are exacerbated for those over the age of 65 who are most vulnerable to the virus. In

---

[1] Stephanie Russo Carroll, et al., *Indigenous Data in the Covid-19 Pandemic: Straddling Erasure, Terrorism, and Sovereignty*, Social Science Research Council (July 11, 2020), https://items.ssrc.org/covid-19-and-the-social-sciences/disaster-studies/indigenous-data-in-the-covid-19-pandemic-straddling-erasure-terrorism-and-sovereignty/.

[2] *COVID-19 Among American Indian and Alaska Native Persons — 23 States, January 31–July 3, 2020*, early release to Morbidity and Mortality Weekly Report (MMWR), CDC (Aug. 19, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6934e1.htm#contribAff.

early May, the Pyramid Lake Paiute Tribe announced 20 positive cases on their reservation. Although this may not seem like a high number, with only 1,300 tribal members, the 20 cases represent a significant outbreak. The Walker River Tribe is currently battling an on reservation outbreak as well. Given these vulnerabilities, vote by mail should remain an option for those tribal members who can manage it; in-person voting options must remain for those who cannot.

To better prepare for the upcoming general election to be held during the COVID-19 pandemic, the Nevada Legislature enacted Assembly Bill 4 ("A.B. 4"). *See* A.B.4, 32nd Leg, Spec. Sess. (Nev. 2020), available at https://www.leg.state.nv.us/App/NELIS/REL/32nd2020Special/Bill/7150/Text. Three provisions of A.B. 4 are especially critical for Native American communities.

First, given the obstacles to picking up and dropping off mail, it is extremely common for Native Americans in Nevada to pick up and drop off mail for each other. However, Nevada criminalizes the collection and delivery of an absentee or mail-in ballot by anyone other than a family member, subjecting the person assisting the voter to imprisonment for a minimum of 1 year and up to 4 years, and a fine of up to $5,000, and creates additional administrative hurdles for family members returning a ballot. NRS §§ 293.330(4), 293.353(4), 293.730(1)(b), 293.730(1)(g), 293.730(2)(a), and 293.730(2)(b). These ballot assistance bans, among the most stringent in the country, disproportionately burden Native American communities. In the short term, A.B. 4 provides much-needed relief to Native Americans by suspending the ballot assistance bans in times of emergency, allowing non-family members, such as individuals, political parties, community organizers, and other groups like the Walker River Paiute Community Health Representatives, to safely return a ballot for one another in the upcoming election. A.B. 4, § 21.

Second, A.B. 4 clarifies that mail ballots "received by mail no later than 5 p.m. on the third day following the election and the date of the postmark cannot be determined, the mail ballot shall be deemed to have been postmarked on or before the day of the election." A.B. 4, § 20 (b)(2). Given the distance to post offices and shortened operational hours, it is more difficult for Native Americans to ensure their ballots are post-marked than other Nevadan voters. Additionally, it takes longer for ballots coming from Native communities to reach county seats because circuitous mail routes delay mail coming from Native American communities. Finally, mail ballots must travel much further because county seats are excessively far from Native reservations, especially when compared to non-Native communities.

Third, A.B.4 provides important mechanisms for tribes to request and receive early on-reservation polling locations, which provides an important alternative for those unable to vote by mail. A.B.4 § 11(3).[3]

Plaintiffs Donald J. Trump for President, Inc., the Republican National Committee, and the Nevada Republican Party challenge these three critical protections provided by A.B. 4, along with other provisions that benefit Native American voters in Nevada. These efforts directly threaten proposed tribal intervenors' rights and the ability of Native Americans in Nevada to cast their ballots and have those ballots count.

Proposed tribal intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, proposed tribal intervenors request permissive intervention pursuant to Rule 24(b).

---

[3] The extended deadlines have since passed but A.B.4 may apply to future emergencies.

## STANDARD OF LAW

Intervention of right can be exercised by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The 9th Circuit applies a four-part test under Rule 24(a):

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Nw. Forest Res. Council* ("NFRC") *v. Glickman*, 82 F.3d 825, 836 (9th Cir.1996). Intervention under Rule 24(a) is construed liberally in favor of potential intervenors. *Forest Conservation Council* ("FCC") *v. U.S. Forest Serv.,* 66 F.3d 1489, 1493 (9th Cir.1995) (abrogated on other grounds). Requests for intervention are "guided primarily by practical considerations," not technical distinctions. *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir.1986), *vacated on other grounds sub nom. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).

## ARGUMENT

**I.     Proposed Tribal Intervenors Are Entitled to Intervene As a Matter of Right**

Proposed tribal intervenors meet the 9th Circuit's four-factor test and have a right to intervene in this action.

First, the motion is timely. "Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). In determining whether a motion to intervene is timely, courts consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* (citation omitted).

Proposed tribal intervenors moved to intervene at an appropriate state in the proceeding. Plaintiffs filed their operative complaint on August 20, 2020, approximately three weeks ago. Motions filed much later nevertheless have been found to be timely. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding a motion to intervene was timely when filed "less than three months" after the complaint was filed); *W. Expl. LLC v. U.S. Dep't of Interior*, Case No. 3:15-cv-00491-MMD-VPC, 2016 WL 355122, at *2 (Jan. 28, 2016) (granting motion to intervene filed nearly two months after action). Defendant Cegavske moved to dismiss on August 24, 2020 (ECF No. 37), alleging Plaintiffs lack standing and their claims are not ripe. Plaintiffs responded to this motion on September 8, 2020. The DNC Services Corporation/Democratic National Committee, DCCC, and Nevada State Democratic Party ("DNC intervenor-defendants") filed a similar motion to dismiss on September 3, 2020 (ECF No. 40). Plaintiffs filed a summary judgment motion last week on September 4, 2020 (ECF No. 42) challenging A.B.4's ballot receipt and acceptance laws. While fast moving, this case is nevertheless at its initial stages and Defendant Cegavske has yet to answer Plaintiffs' Amended Complaint.[4]

---

[4] On August 7, 2020, Intervenors Democratic National Committee filed a proposed answer with their Motion to Intervene. ECF No. 9.

Moreover, intervention would not prejudice any other party. Proposed tribal intervenors' interests in dismissal are aligned with Defendant Cegavske's and the DNC intervenor-defendant's motions to dismiss, and therefore inclusion of proposed tribal intervenors would not prejudice the outcome of those motions. (Proposed tribal intervenors take no position on these motions). Regarding Plaintiffs' very recently filed summary judgment motion, upon admission to the case tribal intervenor-defendants can provide a timely response to that motion. Finally, there has been no delay filing this motion to intervene. Proposed tribal intervenors recognize and support swift resolution of this case in anticipation of the upcoming general election. Thus, proposed tribal intervenors' motion to intervene is timely.

Second, proposed tribal intervenors have a significant protectable interest. "An applicant [for intervention] has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Here, acting as *parens patriae*, proposed tribal intervenors seek to protect their members' ability to vote. Absent A.B. 4's suspension of the ballot assistance bans, the bans would unjustly burden proposed tribal intervenors' members' ability to vote. Given the substandard mail service in tribal communities, Native Americans often rely on each other to pick up and drop off mail, including ballots. The ballot assistance bans criminalize this common practice, making it harder for Native Americans to cast their ballot. If the ballot assistance bans were put back into effect, the Pyramid Lake and Walker River communities would be uniquely and unduly burdened, diminishing their opportunity to vote. Given this risk to the fundamental right to vote, proposed tribal interveners' interest is clearly significant. Indeed, as discussed in this motion's overview, absent many of

A.B.4's provisions, Native communities are at increased risk of disenfranchisement.

Additionally, the rules around ballot receipt and acceptance laws challenged by Plaintiffs recent summary judgment motion squarely implicates tribal intervenor-defendants' interests because voters from Walker River and Pyramid Lake have less access to a post office to ensure their ballots are postmarked; mail coming from Walker River and Pyramid Lake takes longer to arrive; and mail coming from tribal reservations has further to travel to reach the county seat.

Native American tribes routinely protect their members' rights and their tribal interests as *parens patriae*. See e.g. Complaint, *Western Native Voice v. Stapleton*, Cause No. DV 20-0377 (Mont. Dist. Ct. Mar. 12, 2020) (Get out the vote organizations and five tribes as *parens patriae* brought suit challenging Montana's ballot assistance ban); *Spirit Lake Tribe v. Jaeger*, 2020 WL 625279 (D.N.D. Feb. 10, 2020) (denying Defendants' motion to dismiss Plaintiffs second amended complaint) (Spirit Lake Tribe as *parens patriae* and individual Plaintiffs brought suit challenging North Dakota's voter ID law); *Navajo Nation v. San Juan Cty.*, 929 F.3d 1270, 1274 (10th Cir. 2019) (Case 2:12-cv-00039), *aff'g*, 150 F. Supp. 3d 1253 (D. Utah 2015) (Navajo Nation as *parens patriae* and individual plaintiffs brought suit challenging the election districts for both the school board and county commission).

Third, "[o]nce an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave Las Vegas, LLC*, Case No. 2:19-CV-1197 JCM, 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (*citing Lockyer*, 450 F.3d at 442). Here, A.B. 4 instituted a series of key reforms that removed barriers to Native American's access to the ballot box. If these reforms were invalidated, Native

11

Americans communities would again be vulnerable to imminent disenfranchisement.

Fourth, proposed tribal intervenors cannot rely on the parties in this case to adequately represent their interests. "Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir.1986). "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests 'may be' inadequate," and therefore "the burden of making this showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

Like the Democratic Party intervenors in this case, proposed tribal intervenors' interests differ from Defendant Cegavske because she is less likely to argue that some of A.B. 4's policies are required to safeguard Nevadans' and Native American Nevadans' right to vote. *Ohio River Valley Envtl. Coal., Inc. v. Salazar*, No. 3:09-0149, 2009 WL 1734420, at *1 (S.D.W. Va. June 18, 2009) (granting motion to intervene as of right where "difference in degree of interest could motivate the [intervenor] to mount a more vigorous defense"). As the Democratic Party intervenors pointed out in their motion to intervene, Defendant Cegavske argued in favor of upholding the ballot collection bans in state court litigation challenging the constitutionality of the bans. Motion to Intervene, ECF. 9, at 11-12. Indeed, Defendant Cegavske has made it known publicly that she is supportive of the ballot assistance bans and recently urged Governor Sisolak to implement additional burdensome regulations around ballot collection, in defiance of the legislature. James DeHaven, *Top Elections Official Seeks*

*Oversight of 'Ballot Harvesting' Allowed Under New Nevada Law*, Reno Gazette Journal (Aug. 18, 2020, 10:45 a.m.), https://www.rgj.com/story/news/politics/2020/08/18/cegavske-seeks-new-rules-ballot-harvesting/5602290002/. Thus, while Defendant Cegavske may be willing to defend laws passed by the Nevada legislature, it is probable that she is unwilling to vigorously defend those parts of A.B.4 that relax regulations she considers important, even if enforcing those regulations would create substantial burdens on Native Americans.

Additionally, proposed tribal intervenors' interests cannot be adequately represented by the Democratic Party. While the Democratic Party and proposed tribal intervenors may have some similar interests at the outset, it is possible for these interests to diverge. Not all Native Americans are Democrats, and even those Native voters who are Democrats comprise only a tiny subset of Democratic voters in Nevada. If this case were to progress to settlement, the interests of Native American voters from sparsely populated reservation communities may conflict with those voters from more populous urban areas. It is conceivable the Democratic Party may favor the majority of its constituents over the specialized needs of a few Native American voters who may or may not vote in their interests. *Venetian Casino Resort*, 2020 WL 1539691, at *4 (granting intervention where intervenor and defendant "ha[d] a similar interest" but it was "conceivable that [defendant's] interest . . . could conflict with [intervenor's] interest").

Moreover, Section 11 of A.B. 4 has specific provisions that only apply to proposed tribal intervenors. Plaintiffs have sought to invalidate all of Section 11, without care to exempt the tribal provisions that protect proposed tribal intervenors' interests. Proposed tribal intervenors have a right to vigorously protect those unguarded interests. *Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (finding that even though the proposed intervenors may

share the same "ultimate objective" as the defendant, the intervenors have a right "to express their own unique private perspectives and in essence carry forward their own interests.")

Finally, proposed tribal intervenors are intimately aware of the burdens imposed on them and are best situated to defend their own interests. Proposed tribal intervenors contend with the geographic challenges, the inadequate mail service, the socioeconomic barriers, and the increased risk of COVID-19 to their communities, every day.

In sum, proposed tribal intervenors have met all four requirements for intervention as of right under Rule 24(a)(2).

**II. In the Alternative, Proposed Tribal Intervenors Request Permission to Intervene**

Even if this Court found intervention as of right was not warranted, proposed tribal intervenors satisfy the requirements for permissive intervention. Rule 24(b) permits this Court to allow intervention by anyone who "submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Paher v. Cegavske*, Case No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, *3 (D. Nev. Apr. 30, 2020) (quoting Fed. R. Civ. P. 24(b)(1)(B)).[5]  Because a court "has discretion in deciding whether to

---

[5] In addition, an applicant for intervention must also show that the court "has an independent basis for jurisdiction." Id. (citing *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). However, such a showing is unnecessary for the proposed tribal intervenors as the requirement does not apply in "federal-question cases when the proposed intervenor is not raising new claims." *Freedom From Religion Found., Inc. v. Geithner,* 644 F.3d 836, 844 (9th Cir. 2011).

14

permit intervention, it should consider whether intervention will cause undue delay or prejudice to the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention." *Paher*, 2020 WL 2042365, at *3 (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

As demonstrated in above, proposed tribal intervenors have submitted a timely motion and their interests are not adequately represented in this action by Defendant Cegavske or the Democratic Party. Proposed tribal intervenors share common questions of law and fact with Plaintiffs' claims, such as whether A.B. 4 violates the equal protection clause or the right to vote.

Further, intervention will not cause undue delay or prejudice to the original parties because proposed tribal intervenors have a strong interest in a timely resolution of this action in advance of the November Election to allow for the implementation of A.B. 4. In fact, proposed tribal intervenors seek to intervene for the very purpose of an expeditious resolution of the Plaintiffs' claims so that their communities can adequately prepare for the upcoming election.

## REQUEST TO EXPEDITE BRIEFING SCHEDULE

Proposed tribal intervenors believe that expeditious resolution of the Motion would serve the interests of judicial efficiency and ensure that proposed tribal intervenors are able to protect their rights and interests. Proposed tribal intervenors respectfully request the following briefing schedule:

- Responses to proposed tribal intervenors' Motion to Intervene as Defendants shall be filed on or before Friday September 18, 2020; and
- Proposed tribal intervernors' reply briefs, if any, shall be filed on or before Monday, September 21, 2020.

## CONCLUSION

For the reasons stated above, proposed tribal intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b). Proposed tribal intervenors also request an expedited briefing schedule on their motion so as not to cause undue delay due to the accelerated nature of this case.

Respectfully submitted this 11th day of September, 2020.

        LAW OFFICES OF WES WILLIAMS JR., P.C.

        /s/ Wes Williams Jr.
        3119 Lake Pasture Road
        P.O. Box 100
        Schurz, Nevada  89427
        wwilliamslaw@gmail.com

        NATIVE AMERICAN RIGHTS FUND

        Jacqueline De León, Esq. (*pro hac vice forthcoming*)
        1506 Broadway
        Boulder, CO 80302-6296

        Samantha B. Kelty, Esq. (*pro hac vice forthcoming*)
        1514 P St NW Ste. D
        Washington, DC 20005

        *Attorneys for Proposed Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2020, a true and correct copy of the foregoing MOTION TO INTERVENE was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

<u>/s/ Wes Williams Jr.</u>