AARON D. FORD
  Attorney General
GREGORY L. ZUNINO, Bar No. 4805
  Deputy Solicitor General
CRAIG A. NEWBY, Bar No. 8591
  Deputy Solicitor General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1237
E-mail: gzunino@ag.nv.gov
E-mail: cnewby@ag.nv.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; REPUBLICAN NATIONAL COMMITTEE; and NEVADA REPUBLICAN PARTY,<br><br>      Plaintiffs,<br><br>vs.<br><br>BARBARA CEGAVSKE, in her official capacity as Nevada Secretary of State,<br><br>      Defendant,<br><br>and<br><br>DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE, DCCC, and NEVADA STATE DEMOCRATIC PARTY,<br><br>      Intervenor-Defendants,<br><br>and<br><br>PYRAMID LAKE PAIUTE TRIBE AND WALKER RIVER PAIUTE TRIBE,<br><br>      Proposed Intervenor-Defendants. | Case No. 2:20-cv-01445-JCM-VCF<br><br>**STATE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

-1-

Defendant Barbara Cegavske, in her capacity as Nevada Secretary of State and on behalf of the State of Nevada (collectively the "State"), by and through counsel, Aaron D. Ford, Attorney General, Gregory L. Zunino, Deputy Solicitor General, and Craig Newby, Deputy Solicitor General, hereby submit this reply in support of the State's motion to dismiss Plaintiffs' Amended Complaint (ECF No. 29). The State's motion to dismiss (ECF No. 37) seeks dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

DATED this 15th day of September 2020.

> AARON D. FORD
> Attorney General
>
> By: /s/*Gregory L. Zunino*
> GREGORY L. ZUNINO
> Deputy Solicitor General
> gzunino@ag.nv.gov

**POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In their opposition to the State's motion to dismiss (ECF No. 42), Plaintiffs focus almost exclusively on organizational standing as opposed to the standing of their individual members and associates. In so doing, they implicitly rely upon the unstated premise that their right to sue as an organization is divorced from the standing requirements applicable to their individual members and associates. This is a false premise. Plaintiffs have no right to sue as an organization if there is no injury to their individual members and associates. And the Trump campaign fund, namely Donald J. Trump for President, Inc. (Trump, Inc.), has no right to use the organizational standing of the Republican National Committee (RNC) and the Nevada Republican Party (NV GOP) as a proxy for its own organizational standing. Plaintiffs are not, as they suggest, engaged in a monolithic venture to support Republican voters and Republican candidates. Trump, Inc. exists to supports its candidate and only its candidate.

In fact, Trump, Inc. does not claim to have members or associates other than President Donald J. Trump. Additionally, Trump, Inc. does not explain how Nevada's

election laws have injured or disadvantaged the President. The alleged injury of vote dilution does not apply to the President because the President does not vote in Nevada. Any other injury to the President is left to the imagination. The Amended Complaint (ECF No. 29) contains not a single factual allegation that sheds light on Plaintiffs' implied allegation that Nevada's election laws impact the President's electoral prospects. The Amended Complaint suffers from the same deficiency to the extent it implies that Nevada's own Republican candidates have been handicapped in their bids for various state and federal offices. There are no facts in the Amended Complaint to support this assertion, even though it is the apparent foundation for Plaintiffs' claim to associational standing.

Given these pleading deficiencies, the State has expressly challenged the organizational standing of Trump, Inc., apparently without rebuttal. The State has not so challenged the organizational standing of the RNC and the NV GOP because the RNC and NV GOP would have organizational standing but for the lack of an injury to their individual members. The State's challenge to the standing of individual members and associates necessarily defeats any claim to organizational or associational standing on the part of the RNC or the NV GOP. In other words, the RNC and NV GOP cannot claim to be injured as the result of having to divert resources in defense of nonexistent injuries to its members and associates. As discussed in the State's motion to dismiss (ECF No. 37 at 14), an organizational plaintiff who claims to have suffered an injury due to a diversion of resources "must [] show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Valle del Sol Inc.*, 732 F.3d at 1018 (quoting *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).

If their individual members and associates have no standing, then the RNC and the NV GOP have no grounds to claim standing based upon an alleged diversion of their resources. In other words, the RNC and the NV GOP cannot argue that they have been forced to divert their resources in support of members and associates who have suffered

no injuries. The only conceivable basis for their claim to standing in this case is their assertion that their members will suffer from "vote dilution" if the Court does not enjoin the mailing of ballots to Nevada's voters (ECF No. 37 at ¶¶ 6, 31, 32, 34, 102, 125, 140, 154, 168 and 169). This is highly speculative, so speculative in fact that there is not a single case on point suggesting that vote dilution constitutes an injury in the pre-election context.

## II. ARGUMENT

Plaintiffs will not, as they claim, suffer an injury that can be fairly traced to the implementation and application of Nevada's vote-by-mail legislation. See Assembly Bill No. 4 of the 32nd Special Session (2020) of the Nevada Legislature, Act of August 3, 2020, ch. 3, 2020 Nev. Stat. 18, §§ 1–88 (AB 4). As discussed above, Plaintiffs must necessarily premise their standing to bring this lawsuit upon a presumed injury of "vote dilution" to their members, as there is not another factual allegation in the Amended Complaint that even hints at an injury to any other person. Plaintiffs cite *Bush v. Gore* as support for the proposition that potential or threatened vote dilution can amount to an injury sufficient to support standing in federal court (ECF No. 37 at ¶¶ 35–37, 125, 140–142, 145, 146, 149, 154–156, 159–161). *See* 531 U.S. 98 (2000). As noted previously, *Bush v. Gore* has little persuasive value because it was issued *per curiam*, indicating that it was fact specific. The text of opinion includes the following caveat:

> The recount process, in its features here described, is inconsistent with the minimum procedures necessary to protect the fundamental right of each voter in the special instance of a statewide recount under the authority of a single state judicial officer. Our consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities.

*Id.* at 109.

The late Justice Antonin Scalia reportedly used an expletive to describe the equal protection rationale for the decision. Evan W. Thomas, FIRST: SANDRA DAY O'CONNOR (Random House 2019), p. 332. Aside from its questionable legal reasoning, *Bush v. Gore* addressed a post-election situation, specifically the now infamous "hanging chad"

situation, which was qualitatively different than any conceivable election outcome in Nevada. 531 U.S. at 105–107. *Bush v. Gore* provides no support for a requested pre-election order enjoining the distribution of mail-in ballots to Nevada's voters. The claims here are based entirely upon speculation that AB 4 has increased the risk of voter fraud, but the Amended Complaint includes no factual allegations demonstrating that election workers have failed to competently perform their duties, or performed them in an arbitrary and capricious fashion. In fact, three of the claims in this case do not implicate voter fraud at all. These claims challenge provisions of law that allegedly undermine the uniformity of election administration (ECF No. 37 at ¶¶ 124–138, 140–152, and 154–164). According to the uniformity argument, some voters may be subject to greater burdens than other voters if processes and procedures are not uniform from county to county. This is no less speculative than the claims about an increased risk of voter fraud.

To the extent that election workers might do something unexpected during or after the election, as in *Bush v. Gore*, those claims are not ripe for review. To allege an injury of vote dilution prior to an election is to allege that all lawful votes will be diluted relative to the total number of votes cast, both lawful and unlawful. However, there is simply no way to quantify or evaluate how vote dilution may impact individual voters or discrete groups of voters. Arguments about prospective vote dilution are analogous to claims about prospective tax fraud or fiscal mismanagement. For example, electronic filing processes arguably make our tax system more vulnerable to tax fraud. When people commit tax fraud by filing fraudulent electronic tax returns claiming credits or refunds that are not due, all taxpayers presumably suffer an abstract injury because they are forced to bear more than their fair share of the aggregate tax burden; the burden is distributed unevenly across the citizenry as a whole. The U.S. Supreme Court has repeatedly rejected claims to standing premised upon the disproportionality of tax burdens:

> Plaintiffs' principal claim that the franchise tax credit depletes state funds to which they contribute through their taxes, and thus diminishes the total funds available for lawful uses and imposes disproportionate burdens on them, is insufficient to establish standing under Article III. This Court has denied *federal* taxpayers standing under Article III to object to a

> particular expenditure of federal funds simply because they are taxpayers. ... This rationale applies with undiminished force to state taxpayers who allege simply that a state fiscal decision will deplete the fisc and impose disproportionate burdens on them.

*Daimler Chrysler Corp. v. Cuno,* 547 U.S. 332, 333 (2006).

The same distribution principle is true of vote dilution. The alleged disproportionality is an abstraction with no quantifiable injury to an individual voter or group of voters. In fact, the vote dilution problem is indistinguishable from the multitude of other governance problems that affect the citizenry of the United States as a whole. "The proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 485 (1982) (*quoting Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 202, 227 (1974)). "It is one thing for a court to hear an individual's complaint that certain specific government action will cause that person private competitive injury . . . but it is another matter to allow a citizen to call on the courts to resolve abstract questions." *Schlesinger*, 418 U.S. at 223 (internal citations omitted).

Plaintiffs call upon this Court to resolve abstract questions about vote dilution. What measures should Nevada adopt to minimize vote dilution? How might those measures impact access to voting? To what extent might those measures disenfranchise marginalized voters? What measures might Nevada adopt to enfranchise voters while still preserving the integrity of elections? These are questions for legislators, not judges. For the time being, the Nevada Legislature has resolved these questions. Since Plaintiffs have failed to demonstrate that their members and/or associates will suffer an injury due to the enactment of AB 4, their claims to organizational and/or associational standing are without merit. They have diverted their resources to prosecute a non-justiciable lawsuit. Accordingly, their diversion of resources does not support their claims to organizational or

associational standing, nor does it make their claims ripe for review. The Amended Complaint should be dismissed.

### III. CONCLUSION

Plaintiffs cannot rely upon "organizational" or "associational" standing as a substitute for articulating an injury to their members and associates. They have identified no injury to their members and associates. Furthermore, the concept of "vote dilution" is unique to the facts and the circumstances of *Bush v. Gore*. It does not confer standing upon individuals or organizations to challenge election laws before they have even been applied to voters. In substance, the Amended Complaint is a policy critique of vote-by-mail election processes. As such, the Amended Complaint should be dismissed for failure to articulate a jurisdictional basis for the Court's requested intervention in the 2020 general election.

DATED this 15th day of September, 2020.

AARON D. FORD
Attorney General

By: *Gregory L. Zunino*
GREGORY L. ZUNINO (4805)
Deputy Solicitor General
CRAIG A. NEWBY (8591)
Deputy Solicitor General
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1237
gzunino@ag.nv.gov
cnewby@ag.nv.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 15th day of September, 2020, I filed with this Court's CM/ECF electronic filing system, **STATE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS,** and served the parties associated with this case electronically

Jacqueline De León, Esq. (pro hac vice forthcoming)
jdeleon@narf.org
Samantha B. Kelty, Esq. (pro hac vice forthcoming)
kelty@narf.org
Wes Williams, Esq.
wwilliamslaw@gmail.com

*Attorneys for Proposed Intervenor-Defendants,*
*Pyramid Lake Paiute and Walker River Paiute Tribes*

_____
An employee of the Office
of the Attorney General